UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KARRIE V. FREEMAN,

                           Plaintiff,              Case # 17-CV-6862-FPG

v.                                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

## INTRODUCTION

Plaintiff Karrie V. Freeman brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 12. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On August 19, 2014, Freeman protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 162-75. She alleged disability since December 1, 2012 due to chronic back pain, left eye blindness, and uncontrolled diabetes. Tr. 199. On May 9, 2016, Freeman and a vocational expert ("VE") testified at a video hearing before Administrative Law Judge Roxanne Fuller ("the ALJ"). Tr. 26-53. At the hearing, Freeman amended her alleged

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

disability onset date to July 1, 2014. Tr. 10, 29-30. On October 4, 2016, the ALJ issued a decision finding that Freeman was not disabled within the meaning of the Act. Tr. 10-21. On October 20, 2017, the Appeals Council denied Freeman's request for review. Tr. 1-6. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

2

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ analyzed Freeman's claim for benefits under the process described above. At step one, the ALJ found that Freeman had not engaged in substantial gainful activity since the alleged onset date of December 1, 2012. Tr. 12. At step two, the ALJ found that Freeman has macular degeneration, degenerative disc disease, and diabetes mellitus, which constitute severe impairments. Tr. 12-14. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 14.

Next, the ALJ determined that Freeman retains the RFC to perform light work[2] with additional limitations. Tr. 14-20. Specifically, the ALJ determined that Freeman can occasionally climb ramps or stairs but cannot climb ladders, ropes, or scaffolds; can occasionally balance, stoop, crouch, kneel, and crawl; cannot operate a motor vehicle or be exposed to moving mechanical parts or unprotected heights; and can perform work that requires only occasional near and far acuity and depth perception. Tr. 14-15.

At step four, the ALJ found that this RFC does not preclude Freeman from performing her past relevant work as a customer complaint clerk. Tr. 20. Accordingly, the ALJ concluded that Freeman was not disabled under the Act. Tr. 20-21.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

**II.    Analysis**

Freeman argues that remand is required because (1) the RFC determination lacks substantial evidence; (2) the ALJ improperly weighed the medical opinions; and (3) the ALJ improperly assessed her testimony. ECF No. 8-1 at 12-17; ECF No. 13. These arguments are addressed in turn below.

**A.    RFC Determination**

A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.945(a). The ALJ assesses RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The RFC assessment does not have to "perfectly correspond" with any of the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). The Court upholds an RFC finding "when there is substantial evidence in the record to support each requirement listed in the regulations." *Desmond*, 2012 WL 6648625, at *5 (citation omitted).

**1.    Visual Limitations**

Freeman asserts that the RFC determination is unsupported by substantial evidence in part because it only accounts for near and far acuity and depth perception and "completely leaves out any limitation for middle distance vision." ECF No. 8-1 at 13. Freeman argues, without supporting

5

authority, that middle distance vision is "a distance most commonly encountered in a workplace." *Id.* Although Freeman cites treatment records related to her eye issues, which reveal significant cataracts and limited visual potential, these records do not indicate that she has issues with middle distance vision or that a more restrictive RFC determination is warranted. *See* Tr. 262-74, 277-81. Moreover, according to the Dictionary of Occupational Titles, Freeman's past relevant work as a customer complaint clerk, which the ALJ found her capable of performing, does not require middle distance vision. *See* DOT # 241.367-014 (customer complaint clerk), 1991 WL 672252 (U.S. Dep't of Labor Jan. 1, 2016). Instead, the position only occasionally requires near acuity and does not require far acuity, depth perception, color vision, or field of vision. *Id.*

The ALJ's RFC finding that Freeman can perform work that requires only occasional near and far acuity and depth perception is supported by substantial evidence. Most significantly, it is consistent with consultative examiner Harbinder Toor M.D.'s opinion that Freeman has moderate limitation performing a daily routine that requires fine visual acuity. Tr. 281; *see Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence."). Dr. Toor is the only medical source who opined as to Freeman's visual limitations.

The ALJ also considered and summarized the record evidence related to Freeman's eye issues. Tr. 15. Although Freeman testified to blurry and reduced vision that impacted her ability to walk, drive, and cook, the ALJ pointed out that the record contained little treatment notes after her August 2014 eye surgery and that she did not provide additional evidence after the hearing even though she had the opportunity to do so. Tr. 18. After considering the available evidence, the ALJ concluded that Freeman could not climb ladders, ropes, or scaffolds, be exposed to moving

6

mechanical parts or unprotected heights, operate a motor vehicle, or perform jobs requiring more than occasional near and far acuity and depth perception. *Id.* After reviewing the record, the Court finds that these limitations adequately account for Freeman's visual impairments.

### 2. Low Back Limitations

Freeman also asserts that the ALJ did not adequately consider her low back pain. ECF No. 8-1 at 13-14. She points out that she had herniated disc disease with objective examination findings like an abnormal gait, decreased lumbar spine flexion and extension, and tingling and numbness in the right leg. *Id.* Freeman also notes that Dr. Toor opined that she has moderate to severe limitations in her ability to stand, walk, bend, and lift and moderate limitation in her ability to sit a long time. Tr. 280-81.

As discussed in greater detail below, the ALJ properly discounted Dr. Toor's opinion based on its inconsistency with the record evidence. Although Freeman often complained of low back pain, the ALJ pointed out that record evidence contains relatively stable and benign findings. Tr. 15-19. For example, Freeman's lumbar spine x-ray was normal and an MRI showed only minor abnormalities and mild degenerative changes. Tr. 15-16, 224, 298, 300. Although some examinations revealed tenderness, positive straight leg raise ("SLR") tests[3], and abnormal gait, many treatment notes also document normal stance, gait, range of motion, and muscle strength. *See, e.g.*, Tr. 279, 289, 299, 304, 356, 361, 365, 375, 437, 455. It was the ALJ's obligation—and is not the duty of this Court—to resolve this conflicting medical evidence when she made the RFC determination. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of*

---

[3] An SLR test is used to detect disc herniation and is performed by passively flexing the patient's hip while maintaining the knee in full extension. *See* The Student Physical Therapist, Straight Leg Raise Test, *available at* https://www.thestudentphysicaltherapist.com/straight-leg-raise-test.html (2018) (last visited Dec. 12, 2018). The test is considered positive when the patient reports pain at 40 degrees of hip flexion or less. *Id.*

7

*Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence").

After discussing the evidence related to Freeman's back impairment, in addition to considering her eye impairment and history of seizures, a left foot injury, leg pain, and diabetes, the ALJ concluded that "the great weight of the medical evidence" demonstrates that Freeman can perform light work with additional postural limitations. Tr. 19. After reviewing the record, the Court finds that substantial evidence supports this determination.

### B. Medical Opinions

Freeman also argues that the ALJ improperly weighed the medical opinions of treating physician Shaula Woz, M.D. and consultative examiner Dr. Toor. ECF No. 8-1 at 14-16.

#### 1. Treating Physician Dr. Woz

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

When a treating physician's opinion is not given controlling weight, the ALJ must consider the following factors in determining how much weight it should receive: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment

relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

On May 31, 2016, Dr. Woz completed a Medical Source Statement. Tr. 470-75. She opined that Freeman can sit for four hours total in an eight-hour workday and for less than 15 minutes at one time before needing to alternate positions; can stand and walk for two hours total in an eight-hour workday and for 15 minutes at one time before she needs to lie down for 30 minutes; and must rest for two hours total in an eight-hour workday in addition to normal breaks. Tr. 470-72. Dr. Woz also opined that Freeman can occasionally lift and carry up to 10 pounds, can balance for less than 15 minutes, cannot stoop, and should not work around heights, moving machinery, or chemicals. Tr. 472-74.

The ALJ credited Dr. Woz's opinion that Freeman should not work around heights or with moving machinery and has difficulty balancing and adopted these limitations into the RFC assessment. Tr. 20. The ALJ otherwise afforded only "limited weight" to Dr. Woz's opinion. Tr. 19-20.

The ALJ discounted Dr. Woz's opinion in part because she did not provide any restrictions related to Freeman's vision issues, even though the record revealed visual limitations. Tr. 19. Freeman asserts that this was improper because "there is no indication that Dr. Woz treated the serious conditions regarding [her] eyesight, so it is not surprising at all that Dr. Woz did not quantify any eyesight related impairments." ECF No. 8-1 at 15. The ALJ was entitled, however, to discount Dr. Woz's opinion based on how much knowledge she had about Freeman's

9

impairments. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) ("[T]he more knowledge a treating source has about [the claimant's] impairment(s) the more weight [the ALJ] will give to the source's medical opinion."). Accordingly, the ALJ did not err when she discounted Dr. Woz's opinion on this basis.

Moreover, the ALJ did not use this as the sole reason to discount Dr. Woz's opinion. In accordance with the regulations, the ALJ also discounted Dr. Woz's opinion because she found it unsupported by Dr. Woz's own treatment notes. Tr. 19; *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (the ALJ will give more weight to a medical opinion that is supported by relevant evidence). The record contains few treatment notes from Dr. Woz. In November of 2014, Dr. Woz noted that Freeman complained of low back pain, had a positive right side SLR, and an abnormal gait, but she also found full strength in all of Freeman's extremities and indicated that Freeman's lumbar spine MRI showed only mild changes. Tr. 298-300. In December of 2014, Dr. Woz indicated that she reviewed Freeman's right hip MRI, which revealed only mild degenerative changes. Tr. 314. In March of 2015, Dr. Woz noted that Freeman's electromyography ("EMG") results were normal.[4] Tr. 426, 443. Other record evidence from Dr. Woz merely indicates that she reviewed Freeman's medical chart or made an entry on her "problem list." Tr. 424, 427, 441, 443-44.

The mild findings listed above do not support Dr. Woz's highly restrictive opinion and her Medical Source Statement form lacked any supporting explanation. The form included a space where Dr. Woz could describe the findings supporting her opinion, but she left that area blank. Tr.

---

[4] An EMG assesses the health of muscles and the nerve cells that control them. *See* Mayo Clinic, Electromyography (EMG), *available at* https://www.mayoclinic.org/tests-procedures/emg/about/pac-20393913 (May 5, 2018) (last visited Dec. 12, 2018). The results of an EMG can reveal nerve or muscle dysfunction or problems with nerve-to-muscle signal transmission. *Id.*

10

473-74. Accordingly, the ALJ did not err when she discounted Dr. Woz's opinion as unsupported by Dr. Woz's own treatment notes.

In accordance with the regulations, the ALJ also discounted Dr. Woz's opinion because she found it inconsistent with other record evidence. Tr. 19; *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (the ALJ will give more weight to a medical opinion that is consistent with the record as a whole). Specifically, the ALJ noted that "the evidence does not support the extreme limitations regarding [Freeman]'s need to rest, as there are no objective findings or opinions from other physicians that suggest that [she] would require the breaks opined by Dr. Woz." Tr. 19. Moreover, other providers often documented benign findings like normal gait, range of motion, and muscle tone, no sensory deficits, and full muscle strength. Tr. 356, 365, 375, 437. Accordingly, the ALJ did not err when she discounted Dr. Woz's opinion based on its inconsistency with other record evidence.

For all the reasons stated, the Court finds that the ALJ did not err and that she properly discounted Dr. Woz's opinion in accordance with the treating physician rule.

### 2. Consultative Examiner Dr. Toor

The SSA's regulations require the ALJ to "evaluate every medical opinion [she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(c)); *see also* 20 C.F.R. § 416.927(c). Unless a treating source's opinion is given controlling weight, the ALJ must consider: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her

11

area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

On November 12, 2014, Dr. Toor examined Freeman and opined that she has moderate to severe limitation in her ability to stand, walk, bend, and lift; pain that interferes with her balance and physical routine; and moderate limitation in her ability to sit for a long time, engage in a daily routine that requires fine visual acuity, and exert herself due to cardiac disease. Tr. 280-81.

The ALJ summarized this opinion and afforded it only "little weight," because after Freeman "had her stents implanted, treatment notes consistently showed no abnormalities in her heart and lungs and there have been no reported symptoms related to her cardiac issues." Tr. 19 (citing Tr. 467-68). The ALJ also noted that Freeman's "back pain was treated conservatively and records show that her gait has been normal with no signs to suggest significantly reduced muscle strength." *Id.* (citing Tr. 372-75, 467-68). But the ALJ did not completely reject Dr. Toor's opinion; instead, she acknowledged that the record evidence corroborated Dr. Toor's opinion as to Freeman's vision. Tr. 19. Accordingly, the RFC determination limits Freeman to performing work that requires only occasional near and far acuity and depth perception. The RFC limitation restricting Freeman to only occasional balancing is also consistent with Dr. Toor's opinion that pain affects Freeman's ability to balance. Tr. 14, 280.

Freeman merely asserts, without any support, that "[t]here is just no reason to give little or reduced weight" to Dr. Toor's opinion. ECF No. 8-1 at 14. The Court rejects this argument. The ALJ adopted much of Dr. Toor's opinion and, in accordance with the factors set forth above, discounted the remainder of Dr. Toor's opinion based on its inconsistency with the record evidence. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Accordingly, the Court finds that the ALJ did not err in her evaluation of Dr. Toor's opinion.

## C. Evaluation of Freeman's Testimony

In determining whether a claimant is disabled, the ALJ considers all of her alleged symptoms, including pain, and the extent to which they are consistent with the record evidence and affect her daily activities and ability to work. 20 C.F.R. §§ 404.1529(a), 416.929(a) (effective June 13, 2011 to Mar. 26, 2017); *see also* S.S.R. 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). But the claimant's statements alone will not establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). Thus, the ALJ follows a two-step process when considering the claimant's alleged symptoms and how they affect her ability to work. The ALJ must first consider whether the medical evidence shows any impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* If such an impairment is shown, the ALJ must evaluate the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit her work capacity. *Id.* §§ 404.1529(c)(1), 416.929(c)(1).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ will consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *Id.* §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

When the ALJ evaluates the claimant's symptoms, she cannot "make a single, conclusory statement" indicating that she considered the claimant's statements or that the statements are unsupported or inconsistent. S.S.R. 16-3p, 2016 WL 1119029, at *9. The ALJ also cannot "simply . . . recite the factors described in the regulations for evaluating symptoms." *Id.* The ALJ's

decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

Freeman asserts that the ALJ inaccurately described her daily activities and provided "no specific reasons . . . to support findings on credibility."[5] ECF No. 8-1 at 16-17. It is untrue that the ALJ failed to provide specific reasons to support her assessment of Freeman's statements. In accordance with the regulations, the ALJ compared Freeman's allegations and testimony to the treatment notes, objective evidence, and medical opinions, considered Freeman's conservative treatment history and the effect of medication, and discussed Freeman's daily activities. Tr. 18-19; *see* 20 C.F.R. §§ 404.1529(c)(3)(i), (iv)-(vii), 416.929(c)(3)(i), (iv)-(vii).

As to Freeman's daily activities, the ALJ cited Dr. Toor's report and noted that Freeman "has no difficulty managing her personal care, including dressing, grooming, and bathing," "performs household chores, including cooking and cleaning, with little difficulty," and "enjoys crafting and singing." Tr. 13 (citing Tr. 277-81). Freeman asserts that this is inaccurate because Dr. Toor's report states that she cleans four days a week—not that she does so without difficulty—and that her hobbies are crafting and singing—not that she "enjoys" these activities. ECF No. 8-1 at 17. The Court finds these minor discrepancies insignificant to the ALJ's analysis of Freeman's statements.

The ALJ also noted that Freeman testified that she manages her personal care and can clean her home with some difficulty sweeping and vacuuming. Tr. 19 (referring to Tr. 43-44). Although

---

[5] S.S.R. 16-3p, which became effective on March 16, 2016 and applies in this case, superceded S.S.R. 96-7p and "eliminate[d] the use of the term credibility from sub-regulation policy." *Kearney v. Berryhill*, No. 1:16-CV-00652-MAT, 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (citation omitted). The former Ruling put a "stronger emphasis" on the ALJ's duty to make a credibility finding regarding the claimant's statements. *Id.* (citation omitted). The current Ruling makes it clear that the ALJ is not evaluating the claimant's character when she evaluates the claimant's subjective symptoms. *Id.* (citation omitted).

the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), the ALJ may properly consider the claimant's daily activities when assessing her statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Moreover, as mentioned above, the ALJ did not use Freeman's daily activities as the sole reason to discount her statements. Thus, the Court finds that the ALJ did not err by finding that Freeman's daily activities weighed against her disability allegations and that she properly analyzed Freeman's statements in accordance with the regulations.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 17, 2018
      Rochester, New York

                                              HON. FRANK P. GERACI, JR.
                                              Chief Judge
                                              United States District Court